JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
LAW OFFICE OF JULIE A. MERSCH
701 So. Seventh Street
Las Vegas, NV  89101
(702) 387-5868
Fax: (702) 387-0109
jam@merschlaw.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS STAMOS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ACORDIA, INC., n/k/a WELLPOINT, INC.; ANTHEM LIFE INSURANCE COMPANY, as Claims Administrator for WellPoint Flexible Benefit Plan; DOES I through V; and ROE CORPORATIONS I through V, inclusive,<br><br>　　　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT** |

　　　　Plaintiff THOMAS STAMOS, by and through his attorney, JULIE A. MERSCH, ESQ., complains and alleges as follows:

### JURISDICTION AND VENUE

　　　　1.　　This is an action for declaratory and injunctive relief and disability benefits owed, and arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

　　　　2.　　This Court has subject matter jurisdiction under ERISA, 29 U.S.C. § 1132(e)(1); and general federal jurisdiction pursuant to 28 U.S.C. § 1331.

　　　　3.　　Venue is proper in this district, pursuant to 29 U.S.C. § 1132(e)(2).

### GENERAL ALLEGATIONS

　　　　4.　　Plaintiff THOMAS STAMOS ("STAMOS") currently resides in Washoe Clark County, State of Nevada and at all times relevant was a qualified participant in the disability

plans through his employer ACORDIA, INC. ("ACORDIA") within the meaning of 29 USCA § 1002(7) of ERISA.

5.     Upon information and belief, as of January 1995, Defendant ACORDIA was Plaintiff's employer and the policyholder of the short-term and long-term disability plans. Upon information and belief, ACORDIA is now known as WellPoint, Inc., which is a participant in the WellPoint Flexible Benefit Plan ("subject plan").

6.     In January 1995, Defendant Anthem Life Insurance Company ("ANTHEM") was ACORDIA's agent and the designated Claims Administrator of the subject plan.  Thus, ANTHEM was and is a fiduciary with respect to the subject plans as that term is defined pursuant to 29 U.S.C. § 1002(21)(A).  As of January, 1995, ANTHEM fully insured the subject plans and performed claims handling functions for the Plan, including the ultimate decision of whether to accept, deny, or terminate short and long-term disability claims.

7.     Pursuant to the policy provisions of the subject plans, the review of STAMOS's claim termination is *de novo*.

8.     On October 9, 1995, STAMOS fell victim to a stroke wherein he suffered right basal ganglia and thalmic intracerebral hemorrhage requiring emergency surgery involving right frontal craniotomy and decompression of the hematoma.  As a result of the stroke, he suffered and continues to suffer left-sided paresis affecting his left arm and left leg, as well as cognitive deficits.

9.     As of January 1, 1995, Plaintiff was employed as President of Acordia, Inc., a financial consulting and insurance brokerage company.  As President, STAMOS was responsible for the planning, development, and establishment of the policies and objectives of the business organization.  His duties included, *inter alia*, conducting vendor and office meetings, performing managerial statistical reviews and renewal analyses, planning new business strategies, traveling extensively throughout the state of California to meet with new and existing clients, overseeing the day-to-day operations of the company's Reno office, and reviewing production and accounting reports.  He was also in charge of client relations and new business prospecting.  His position required a high degree of interpersonal communication and

1  conflict resolution skills, problem-solving ability, written and oral comprehension and
2  expression skills, and mathematical reasoning.  In order to fulfill the material and substantial
3  duties of his own occupation, STAMOS was required to work at least 40 hours per week.

4      10.   As President of Acordia, Inc., STAMOS was a "Class I - Band 10 and above"
5  employee.  As such, he is eligible for disability benefits through Benefit Duration as long as he
6  is "unable to perform with reasonable continuity the material and substantial duties of his
7  customary occupation or employment."

8      11.   STAMOS qualified for and was awarded Social Security Disability benefits
9  from the Social Security Administration in April, 1996.  It deemed STAMOS disabled as of
10 October 9, 1995.  STAMOS continues to receive Social Security Disability benefits through the
11 present.

12     12.   In October, 1995, STAMOS submitted a claim to ANTHEM for short-term
13 disability benefits.  ANTHEM accepted the short-term disability claim and paid STAMOS
14 short-term disability benefits covering the period October 9, 1995 through April 5, 1996.

15     13.   Under the terms of the subject plans, STAMOS applied for long-term disability
16 benefits ("subject claim") to begin after the expiration of the maximum benefit period under
17 the short-term plan.  ANTHEM accepted the subject claim and paid STAMOS long-term
18 disability benefits from April 6, 1996 through August 5, 2009.

19     14.   On September 12, 2003, Anthem conducted a file review and concluded that the
20 duration of STAMOS's restrictions and limitations was "lifetime as maximum medical
21 improvement due to Cerebral Vascular Accident (CVA) is between the first 6-12 mos.  He is
22 currently 8 years post CVA."

23     15.   On August 11, 2009, ANTHEM wrote to STAMOS advising that it was
24 "updating" his long-term disability claim and *suspending* his benefit pending the receipt of a
25 completed Attending Physicians Statement ("APS"), all medical records for the past 12
26 months, tax returns from 2003 to the present, and a "detailed explanation as to your association
27 with [Medical Management Associates]" (hereinafter, "MMA").  See Letter to Thomas Stamos
28 from Lisa Pucket dated August 11, 2009.  ANTHEM was already in possession of a medical

3

1  release allowing it to obtain STAMOS's medical records and suspended benefits without
2  asking for an updated APS first.

3       16.    STAMOS substantially complied with Anthem's request.  Specifically, he
4  provided the 2003-2007 US Income Tax Returns for Medical Management Associates, Inc. and
5  his own 1040 Individual Returns for 2004 and 2005.  The MMA returns showed annual income
6  of between $500-700.  He explained to ANTHEM that his involvement with MMA was strictly
7  passive and that the business remained a "dormant sub chapter S corporation."  He further
8  explained that MMA's license was revoked in 2004 by the State of Nevada for inactivity since
9  2003 and was in the process of being dissolved.  See Letters to Anthem from STAMOS marked
10 "received" on August 24, 2009 and September 14, 2009.

11      17.    On October 7, 2009, ANTHEM had a Vocational Review performed by Nancy
12 O'Reilly, MS, vocational rehabilitation coordinator for Atlanta Life & Disability Service
13 Center.  Ms. O'Reilly reviewed the notes from Catherine Goring, MD, STAMOS's long-time
14 treating physician, for dates of service August 19, 2009 and August 11, 2008; a June 17, 2009
15 note from Gerald Hershwee, DO (neuro-ophthalmologist); and the tax returns for MMA from
16 2003-2008 all showing minimal income ($300-$761).  Based on her review, Ms. O'Reilly
17 recommended that ANTHEM proceed with an Independent Medical Examination ("IME")
18 after SIU [special investigation unit activity]; do a background check/activity check; have
19 STAMOS fill out an Activities of Daily Living ("ADL") form; and thereafter, based on the SIU
20 and IME results, determine if a Functional Capacity Evaluation ("FCE") was needed to
21 determine STAMOS's restrictions and limitations.  See Vocational Review by Nancy O'Reilly
22 dated October 7, 2009.

23      18.    Five days after Ms. O'Reilly's review, on October 12, 2009, ANTHEM
24 terminated STAMOS's long-term disability benefits.  See Letter to Thomas Stamos from Lisa
25 Puckett dated October 12, 2009 ("termination letter").  The IME had not been performed and
26 STAMOS had not been asked to fill out an ADL form.  The termination letter stated that the
27 claim had been closed for "failure to provide all required information needed to evaluate
28 ongoing eligibility for disability benefits."  The letter listed several IRS tax forms as

"information [that] has not been received or is incomplete," yet did not mention that it was missing any *medical documentation* necessary to evaluate STAMOS's eligibility. Moreover, ANTHEM did not explain why missing IRS tax forms were necessary to evaluate STAMOS's eligibility for ongoing disability benefits.

19. The termination letter further stated that the information received did "not support a severity of function that would preclude you from performing your own job *or any job that you are qualified to perform*", even though ANTHEM acknowledged in the same letter that the "any occupation" definition did not apply to salary band 10 and above employees such as STAMOS (emphasis added).

20. The termination letter further stated, *inter alia*, that "It appears that you have recovered sufficiently from your stroke as you were able to start a company and preside as president." However, ANTHEM did not explain the basis for its conclusion that STAMOS had "recovered sufficiently" from his stroke, other than citing his ability to "travel, drive a car, and compose detailed letters regarding [his] current medical and financial history." Nor did Anthem address the information provided by STAMOS regarding the defunct status of MMA (since 2003) and the fact that his tax returns only reflected minimal income from MMA.

21. STAMOS, after engaging the services of an attorney, submitted his appeal in a letter to ANTHEM dated February 17, 2010 ("appeal letter"). The appeal letter cited, *inter alia*, ANTHEM's failure to provide a rational basis for its contention that STAMOS's medical condition had somehow improved from the year before after essentially 15 years with no documented change in his functional status. The appeal letter made detailed arguments in support of reinstatement of the subject claim, and provided all of the remaining missing IRS tax returns with the exception of the 2008 form 1040, which was forwarded to ANTHEM on April 12, 2010.

22. On March 4, 2010, ANTHEM wrote to STAMOS's attorney requesting that STAMOS undergo an IME by a neurologist, and that STAMOS fill out and return an ADL form and an Authorization for the Release of Information. The IME was scheduled for April 5, 2010 with Dr. Charles Quaglieri of Reno Neurological Associates in Reno. STAMOS attended

the IME as requested.  The ADL forms and the Authorization for the Release of Information were completed and returned to ANTHEM on March 24, 2010.

23. At ANTHEM's request, Dr. Quaglieri performed the IME on April 5, 2010.  In his IME report, Dr. Quaglieri opined, *inter alia*, that STAMOS appeared to have overcome the residual effects of his stroke to the point where, between 1997 and 2003, he was able to "function successfully" as the head of a workers compensation consultant company, and "subsequently, briefly and in a limited way, for a second company called Medical Management Associates." He lists the records provided by ANTHEM for his review including, *inter alia*, limited medical records and "an occupational description of the patient's current position as 'owner, Medical Management Associates.'" The list does not include the APS's filled out by Dr. Goring in 2008 and 2009, the Occupational Description of "President" as provided to ANTHEM by WellPoint, or the ADL form filled out by STAMOS.  Nor did Anthem provide Dr. Quaglieri with a copy of STAMOS's Social Security Disability award showing total disability as of October, 1995.

24. In direct response to Dr. Quaglieri's report, ANTHEM denied STAMOS's appeal on April 22, 2010 ("appeal denial letter").  Although ANTHEM had received Plaintiff's appeal letter and the ADL form he provided, ANTHEM cited the results of Dr. Quaglieri's IME as the sole basis for denial, simply stating that "he was able to manage two small businesses" and therefore was "capable of full-time sedentary work." The appeal denial letter advised STAMOS of his right to bring an action in federal court under ERISA Section 502(a)(1)(B).

**Claim for Relief: Wrongful Denial of Benefits under ERISA §502(a)(1)(B), 29 U.S.C. §1132 (A)(1)(B)**

25. Paragraphs 1-24 are incorporated by reference as if fully set forth herein.

26. ANTHEM has wrongfully terminated long-term disability benefits to Plaintiff in violation of the subject plans provisions, ERISA, and interpretive case law for the following reasons:

   a. ANTHEM imposed on STAMOS a condition for coverage not present in the relevant definition, i.e., proof that he was not otherwise gainfully employed, and

arbitrarily and capriciously determined that he was "otherwise gainfully employed" when he was not, as revealed by the tax returns provided by STAMOS.

b. ANTHEM has failed to adequately investigate the subject claim, consistent with its fiduciary duty owed to STAMOS. Anthem did not perform any analysis regarding whether STAMOS was "unable to perform with reasonable continuity the material and substantial duties of his customary occupation or employment" (as itemized in paragraph 9, *supra*) and ignored consistent and repeated medical information that he could not work, as well as its own recommendations by Nurse O'Reilly for further investigation prior to terminating benefits. Further, ANTHEM denied STAMOS's appeal without following up with Dr. Quaglieri as to whether the restrictions and/or limitations placed upon STAMOS's work activities by Dr. Goring were reasonable and consistent with the objective findings of the IME. ANTHEM did not provide Dr. Quaglieri with STAMOS's ADL form, the APS's from Dr. Goring for 2008 or 2009, or a description of the material and substantial duties of STAMOS's own occupation as President of Acordia, Inc.

c. ANTHEM, by its own statements and actions, had already concluded that STAMOS was entitled to benefits for the duration of the policy. However, ANTHEM arbitrarily terminated benefits as of August 5, 2009 without explaining what had changed in STAMOS's medical or vocational picture to support termination.

d. ANTHEM's termination of benefits and its decision to uphold termination on appeal are not based on STAMOS's current ability to perform his own occupation. Instead, ANTHEM cites STAMOS's ability to "travel, drive a car, and compose detailed letters" in its termination letter as reasons for termination of benefits. In addition, without any proof, ANTHEM asserted that STAMOS was able to successfully manage two small businesses even though STAMOS explained that

MMA was a business he set up for himself to try to accommodate his business activities after his recovery from the stroke, but the business did not work out as he had hoped and in fact he only made a few hundred dollars in total income from the business.

e. ANTHEM failed to consider in any way as proof in support of disability the fact that the Social Security Administration approved STAMOS's claim for disability benefits as of April, 1996 or otherwise explain why its evaluation of STAMOS's qualifications for ongoing total disability benefits led to a different outcome. ANTHEM did not tell Dr. Quaglieri that STAMOS had been receiving Social Security Disability benefits since 1996.

f. ANTHEM has failed to fully and fairly consider STAMOS's own statements in support of disability. In doing so, ANTHEM has never explained in any way the basis for its rejection of Plaintiff's reports of limitations and restrictions on his ability to perform the material and substantial duties of his own occupation, specifically, his problems with memory and concentration, easy fatigue, left-sided hemiparesis, and ambulation difficulties.

g. ANTHEM failed to advise STAMOS in its termination letter what further information was needed to perfect his appeal, as required by ERISA. In spite of the fact that STAMOS had provided ANTHEM all of the documents requested in its suspension letter, the termination letter stated that his claim had been closed "for failure to provide all required information needed to evaluate ongoing eligibility for disability benefits."

27. As a result of the foregoing actions and inactions, ANTHEM has failed to pay STAMOS long-term disability benefits from August 6, 2009 through the present.

PRAYER FOR RELIEF

28. STAMOS respectfully requests that this court review the termination of benefits in this case and declare that he is entitled to: 1) past long-term disability benefits from August 5, 2009 through the present; 2) reinstatement of his long-term disability benefits; 3) an award

8

of pre-judgment interest; and 4) payment of attorney's fees and costs associated with attempting to secure the benefits owed to him pursuant to ERISA §502(g)(1), 29 U.S.C. §1132(g)(1).

DATED this 10th day of June, 2010.

LAW OFFICE OF JULIE A. MERSCH

By:   /s/ Julie A. Mersch
JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
701 South 7th Street
Las Vegas, Nevada 89101
Attorney for Plaintiff

W:\STAMOS\PLDGS\COMPLAINT.wpd